# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

**CIVIL ACTION NO. 11-119-DLB**

**ROSE DOVE-ASKIN**                                                                    **PLAINTIFF**

vs.                          **MEMORANDUM OPINION & ORDER**

**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

\*    \*    \*    \*    \*    \*    \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rose Dove-Askin applied for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) on February 5, 2004. (Tr. 83-85, 406-408). At the time of filing, Plaintiff was 38 years old and alleged a disability onset date of October 26, 2003. (Tr. 98). Plaintiff alleges that she is unable to work due to left shoulder pain, carpal tunnel syndrome, osteoarthritis, migraines, spinal injuries and mental impairments. (Tr. 101, 133, 140). Her application was denied initially and again on reconsideration. (Tr. 67-73, 411-419). At Plaintiff's request, an administrative hearing was conducted on August 1, 2006. (Supp. Tr. 1). On September 1, 2006, Administrative Law

1

Judge (ALJ) Don C. Paris ruled that Plaintiff was not disabled and therefore not entitled to DIB or SSI. (Tr. 46-56). Plaintiff filed a request for review with the Social Security Administration's Appeals Council on October 26, 2006, and on March 12, 2008, the Appeals Council found that ALJ Paris' decision was not supported by substantial evidence and issued a remand order which instructed the ALJ to give further consideration to the treating source opinion and the nature of Plaintiff's past work activity. (Tr. 36).

A remand hearing was conducted on August 6, 2009. (Tr. 422-440). ALJ Paris issued a second unfavorable decision on September 9, 2009. (Tr. 13-24). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on January 31, 2011. (Tr. 8-11).

On April 1, 2011, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 13, 14).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision,

provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.  The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 26, 2003, the alleged onset date. (Tr. 18). At Step 2, the ALJ found that Plaintiff had the following severe impairments: status post motor vehicle accident with multiple thoracic vertebral fractures and osteopenia of the hip and lumbar spine. (Tr. 18). The ALJ also determined that the Plaintiff's alleged gastroesophageal reflux disease,

hypothyroidism, arthritis, carpal tunnel syndrome, migraine headaches, osteoporosis, post traumatic stress disorder, bipolar disorder, obsessive compulsive disorder, and persistent left shoulder strain were not severe impairments. (Tr. 18-19). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light exertional work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 20). Plaintiff can lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk six hours in an eight-hour work day; sit six hours in an eight-hour day; and occasionally stoop, kneel, crouch or crawl. (Tr. 20). Moreover, the ALJ found that Plaintiff has no vocationally relevant past work. (Tr. 22).

At Step 5, the ALJ found that Plaintiff was born on December 10, 1965 and was 37 years old, which is defined as a "younger person," on the alleged disability onset date. (Tr. 23). *See* 20 C.F.R. §§ 404.1563, 416.963. The ALJ also found that Plaintiff has at least a high school education and is able to communicate in English. (Tr. 23). Considering the Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (Tr. 23). ALJ Paris therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged onset disability date of October 26, 2003 through the date of the decision. (Tr. 50).

C.  **Analysis**

Plaintiff advances several arguments on appeal. First, Plaintiff alleges that the ALJ unreasonably failed to find Plaintiff's left shoulder strain and mental impairments to be "severe." Next, Plaintiff contends that the ALJ erred when he failed to specify which Listings he considered and provide a specific explanation for his finding that no Listings were met or equaled. Furthermore, Plaintiff asserts that the ALJ failed to properly assess the medical opinions in the record. Specifically, Plaintiff claims that the ALJ did not give proper weight to the treating physician's opinion. Finally, Plaintiff argues that the ALJ improperly assessed Plaintiff's RFC. Each of these arguments will be addressed in turn.

1. **Substantial Evidence Supports the ALJ's Determination that Plaintiff's Shoulder Strain and Mental Impairments Were Not Severe Impairments**

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, a "non-severe" impairment or combination of impairments does not significantly limit an individual's physical or mental ability to perform basic work activities. §§ 404.1521(a), 416.921(a). At step two, "significant" is liberally construed in favor of the claimant. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). "Basic work activities" are defined as the "abilities and aptitudes necessary to do most jobs." §§ 404.1521(b), 406.921(b).

The purpose of the second step is to allow the Commissioner to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). The Sixth Circuit has construed the severity regulation as a "*de minimis* hurdle" in

the disability determination evaluation. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). An impairment or combination of impairments is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris*, 773 F.2d at 90).

When considering a claimant's symptoms at the second step, the ALJ must make two inquiries: (1) whether the objective medical evidence establishes a medically determinable physical or mental impairment(s) that could reasonably be expected to cause the alleged symptom(s); and (2) whether the intensity, persistence, and limiting effects of such symptoms limit the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529, 416.929; S.S.R 96-3p. In evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers all the available evidence, including claimant's history, signs and laboratory findings, statements from claimant about how symptoms affect claimant, and medical opinions. 20 C.F.R. §§ 404.1529(c), 416.929(c).

### i. Left Shoulder Strain

In the present case, the ALJ determined that the medical evidence of record does not support a medically determinable impairment with respect to Plaintiff's left shoulder strain which could reasonably be expected to produce Plaintiff's alleged symptoms, and further found that she has no "severe" impairment based on those allegations. Plaintiff argues the objective medical evidence supports her contention that her left shoulder pain has more than a minimal effect on her ability to perform work tasks. Plaintiff's argument is unpersuasive.

On October 26, 2003, Plaintiff was involved in a single-car motor vehicle accident, in which the vehicle she was driving overturned. (Tr. 181). Immediately following the

accident, she presented to the emergency room and X-rays were taken of her skull, chest, bilateral rib, and cervical, thoracic, and lumbar spines. (Tr. 284-85). The X-rays were unremarkable, except for the thoracic spine which indicated small anterior wedge compression fractures. (*Id.*). Following the accident, Plaintiff presented to her primary care physician, Dr. Gary Melton, for follow-up. (Tr. 276). In addition to other problems, Plaintiff complained of left shoulder pain and decreased range of motion. (Tr. 274). Although the record is unclear as to whether Dr. Melton actually examined Plaintiff's shoulder, he diagnosed her with a left shoulder strain. (Tr. 274).

In early 2004, Plaintiff saw an orthopedic surgeon, Dr. Richard Hoblitzell, for her thoracic spine compression fractures. (Tr. 330). At this time, Plaintiff complained of intermittent numbness extending into her left arm. (Tr. 330). Believing she might have posttraumatic carpal tunnel syndrome, Dr. Hoblitzell sent Plaintiff for an EMG study of her left upper extremity. (Tr. 330). However, the EMG studies were normal. (Tr. 329).

In May 2005, Plaintiff complained of pain in her neck region that extended into her left upper extremity. (Tr. 329). She was noted to have diffuse tenderness of her left arm, but it was neurologically intact. (Tr. 329). Dr. Hoblitzell was concerned about a cervical disc bulge with some nerve root irritation and sent Plaintiff for a bone scan and repeat MRI of her cervical spine. (Tr. 329). The MRI of the cervical spine revealed no abnormalities. (Tr. 327). The bone scan showed subtle increase uptake at T11-12, consistent with Plaintiff's prior compression fractures; however, it was unremarkable as to Plaintiff's neck or left upper extremity. (Tr. 327). At this time, Dr. Hoblitzell stated that Plaintiff should be at maximum medical improvement and sent her for a functional capacity evaluation that Plaintiff never completed. (Tr. 327).

7

In September 2006, Plaintiff returned to Dr. Hoblitzell complaining of worsening pain in her left shoulder. (Tr. 327). On examination, Plaintiff had some pain with cervical range of motion but a negative Spurling sign. (Tr. 327). She described tingling in her left hand that followed no definite dermatomal pattern. (Tr. 327). She had near full passive range of motion in her left shoulder with positive impingement sign, and her rotator cuff strength appeared to be within normal limits. (Tr. 327). Dr. Hoblitzell diagnosed her with a persistent left shoulder strain and ordered X-rays and an MRI to rule out a small rotator cuff tear. (Tr. 327). The X-rays showed mild acromioclavicular arthritis but no other significant abnormalities. (Tr. 328). Plaintiff's health insurance did not approve the MRI. (Tr. 367).

In March 2007, Plaintiff again complained of left shoulder pain. (Tr. 367). Examination revealed pain over her subacromial bursal region with a positive impingement sign. (Tr. 367). Her rotator cuff strength appeared to be only slightly weakened. (Tr. 367). Plaintiff again described intermittent numbness extending into her left arm but remained neurologically intact. Dr. Hoblitzell felt that Plaintiff had a "*possible* rotator cuff tear" and rescheduled her for an MRI to confirm the diagnosis (Tr. 367), but the MRI was never obtained. Besides taking pain medication prescribed by her treating physician, Plaintiff did not seek further treatment for her left shoulder pain. (Tr. 360).

While the objective medical evidence establishes that Plaintiff has a mild left shoulder impairment, it says nothing about the severity of Plaintiff's condition. (Tr.328). The mere diagnosis of a medical condition is not, by itself, indicative of a severe impairment. *See Higgs*, 880 F.2d at 863. Plaintiff's treating physicians' reports are silent concerning any physical limitations or restrictions caused by Plaintiff's left shoulder impairment. Indeed, Dr. Melton opined that Plaintiff's reaching, handling, feeling, and

8

pushing/pulling abilities were not affected by her impairments. (Tr. 311). Consequently, substantial evidence exists to support the ALJ's decision that Plaintiff's left shoulder strain is not severe.

In addition to the lack of objective medical evidence, the ALJ also found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible. 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 96-7p. The ALJ noted that Plaintiff's reported daily activities were inconsistent with her complaints of disabling pain. (Tr. 21-22). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (An ALJ may consider a Plaintiff's daily and social activities when evaluating her credibility.). Despite Plaintiff's testimony indicating an overall debility, other evidence confirms that Plaintiff has been able to drive, shop for groceries, attend college to earn nine credit hours per semester, complete homework, pay her bills, cook meals such as pork chops, hamburgers and chicken, feed her pets, mop and sweep, do laundry, dust, use a computer, watch television, interact with her children, go on dates, attend church, visit with relatives and attend to her personal needs. (Tr. 118-19, 155-56, 162; Supp. Tr. 7-9, 31-33, 35-37). The ALJ also stated that one of the factors influencing the conclusions reached in his decision was the Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." (Tr. 22). "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (quoting *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's shoulder impairment was not severe.

### ii. Mental Impairments

The ALJ also found that Plaintiff's medically determinable mental impairments of adjustment disorder with depressed mood and generalized anxiety disorder, considered singly and in combination with one another, do not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and are therefore non-severe. Plaintiff contends that the weight of the evidence supports a finding that her psychological impairments are "severe." The Court disagrees.

Plaintiff claims that she has suffered from psychological problems for several years. (Tr. 13). The record reveals that Plaintiff first saw a mental health specialist on November 13, 2002, prior to Plaintiff's alleged disability onset date. (Tr. 401). Plaintiff presented to Bluegrass Regional Mental Health because she was having difficulty coping with a legal situation involving sexual harassment by her neighbor. (Tr. 403). Plaintiff reported depression but defined no symptoms. (Tr. 401). The clinician questioned Plaintiff's reliability, (Tr. 401), and stated that her "mood/affect [was] not congruent with [her] reported level of problems." (Tr. 402). Plaintiff stated that she had previously been diagnosed with bipolar disorder, yet she was unfamiliar with its symptoms and was not currently taking any medication. (Tr. 402). Plaintiff was to start individual sessions to develop a treatment plan. (Tr. 405). Upon follow-up in December 2002, Plaintiff was found to have a Global Assessment of Functioning (GAF) score of 70.[1] (Tr. 394). Although Plaintiff was supposed to seek treatment for six months, (Tr. 394), she failed to return for further sessions. (Tr.

---

[1] According to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV)*, a GAF score of 41-50 indicates serious symptoms, such as suicidal ideation and severe obsessional rituals or serious difficulty in social functioning. A GAF of 51-60 indicates moderate symptoms or some difficulty in social, occupational or school functioning, but generally the individual functions well. A GAF of 61-70 indicates some mild symptoms or difficulty in social functioning, but again the individual is functioning well.

396).

On June 16, 2004, Plaintiff underwent a consultative examination with licenced psychologist, Dr. Thomas Shurling. (Tr. 214). Dr. Shurling noted that Plaintiff showed no evidence of cognitive or motor slowing or disturbance in form or content of thought. (Tr. 218). She was not labile or distractible. (Tr. 218). Moreover, her immediate, delayed, recent and remote memory were intact. (Tr. 218). Dr. Shurling indicated that she "functions within normal limits in all spheres. She did not appear to be in any distress and did not appear to have disturbed mood and affect." (Tr. 219). She followed instructions and was able to sustain attention. (Tr. 219). He diagnosed her with adjustment disorder with depressed mood, partner relational problems and parent-child relational problems. (Tr. 219). He assessed a GAF score of 65-70. (Tr. 219).

On June 30, 2004, Plaintiff presented to North Key Community Care, upon referral from Dr. Melton. (Tr. 320). Plaintiff complained of depression, posttraumatic stress disorder (PTSD), and anxiety/panic disorder. (Tr. 313). Plaintiff reported that she was being treated for bipolar disorder and had been on Lithium in the past. (Tr. 313). Based on the Patient Verbal Report alone, and not any psychological or psychiatric evaluation, Plaintiff was initially diagnosed with bi-polar disorder, most recent episode depressed, generalized anxiety disorder (GAD) and PTSD and assessed a GAF score of 50. (Tr. 320). After this initial appointment, Plaintiff failed to return for any follow-up treatment.

Plaintiff returned to Bluegrass Regional Mental Health on October 24, 2006. (Tr. 398). Plaintiff reported being treated for anxiety and depression by Dr. Melton and complained of being overwhelmed with life stressors and difficulty coping with such. (Tr. 398). Again, the clinician questioned Plaintiff's reliability. (Tr. 398). She was initially

11

diagnosed with mood disorder and to rule out personality disorder. (Tr. 399). While it is unclear whether Plaintiff actually returned for further treatment, there is a further report dated December 15, 2006 diagnosing Plaintiff with anxiety disorder, not otherwise specified, and to rule out mood disorder. (Tr. 397). She was also assessed a GAF score of 60. (Tr. 397). Plaintiff again failed to keep her appointments and did not return until late 2007. (Tr. 390). On February 1, 2008, she was diagnosed with anxiety disorder and dependent personality traits and assessed a GAF score of 61. (Tr. 389).

Based on the medical evidence, it is clear that Plaintiff's mental impairments cause no more than mild limitations on the Plaintiff's ability to perform basic work activities. Indeed, no mental health specialist has identified any specific limitations on Plaintiff's ability to work. Most of Plaintiff's diagnoses were based solely on her reported symptoms and several times she was noted to be unreliable. Additionally, although Plaintiff has sought mental health treatment on several occasions, she failed to follow her treatment plans. Finally, as stated above, Plaintiff has been able to participate in a variety of daily activities that refute any significant limitations on her ability to perform mental work activities, such as attending college, completing homework, interacting with her children, keeping in contact with her daughter's teachers and attending parent-teacher conferences. (Tr. 118-19, 155-56, 162; Supp. Tr. 7-9, 31-33, 35-37). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe.

   **2.   The ALJ Committed Harmless Error When He Failed To Identify Which Listings He Considered**

Plaintiff claims that the ALJ erred by failing to specify which Listings he considered at Step 3 of the sequential analysis. In his decision, the ALJ simply stated that he "has

reviewed the medical evidence of record in its entirety and finds that, when considered individually or in combination, the claimant's impairments do not meet or equal the level of severity set forth in any of the listed impairments." (Tr. 19).

There is a split among circuits as to whether an ALJ's summary conclusion that a plaintiff's impairments did not meet or equal any listed impairments, without mentioning the relevant listings or explaining the decision, would alone require a remand. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *compare Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000) *and Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (requiring remand) *with Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) *and Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (automatic remand not required). Recently, the Sixth Circuit held in an unpublished opinion that an ALJ erred by failing to analyze a plaintiff's physical condition in relation to the listed impairments. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). The Court found that the error was not harmless because if the plaintiff meets a listed impairment, she is disabled within the meaning of the regulations and entitled to benefits. *Id.* Moreover, in that particular case, it was possible that "the evidence [plaintiff] put forth could meet [a] listing." *Id.*

The present case is clearly distinguishable. Although Plaintiff fails to direct the Court's attention to which listing(s) her impairments allegedly meet or medically equal, a review of the listings reveal that the ALJ should have analyzed Plaintiff's severe impairments under Listing 1.04 (Disorders of the spine). This listing requires certain disorders with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss ... accompanied by sensory

13

or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test ... *or* [s]pinal arachnoiditis ... manifested by severe burning or painful dysesthesia ... ." 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added).

The evidence certainly established that Plaintiff had compression fractures of her thoracic spine, degenerative disc disease of her cervical spine and osteopenia of her lumbar spine. However, the record is devoid of any evidence of nerve root compression or spinal arachnoiditis. (Tr. 346) (Plaintiff's cervical MRI reveals there is no nerve root compression.). Accordingly, Plaintiff's severe impairments did not meet or medically equal a listing, and therefore the ALJ's error was harmless.

### 3. The ALJ Did Not Improperly Reject the Opinion of Treating Physician, Dr. Gary Melton

Plaintiff argues that the ALJ failed to give deference to the opinion of treating physician, Dr. Melton. "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions are only given such deference when supported by objective medical evidence and consistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see* C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ concludes that either criterion is not satisfied, she applies the following factors in determining how much weight to give a treating physician's opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source . . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544.

"'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). Accordingly, an ALJ may elect not to give controlling weight to a treating physician's opinion, as long as she provides "good reasons" for so doing. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In the present case, the ALJ rejected the limitations included in Dr. Melton's March 23, 2005 physical RFC assessment. (Tr. 310-11). Dr. Melton opined that Plaintiff could lift ten pounds; stand and/or walk for four hours total in an eight-hour day; sit without interruption for two hours at a time; never climb or crawl; and only occasionally balance, stoop, crouch or kneel. (Tr. 310-11). These restrictions essentially limit Plaintiff to work requiring no greater than sedentary exertion. (Tr. 22).

Contrary to Plaintiff's assertion, the ALJ did not impermissibly reject Dr. Melton's opinion regarding Plaintiff's functional limitations. A treating physician's opinion is only entitled to deference when it is a *medical opinion*. *See* 20 C.F.R. § 404.1527(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work" or the claimant's "residual functional capacity"–the opinion is not entitled to any particular weight. 20 C.F.R. § 404.1527(e); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.").

Moreover, the ALJ determined that Dr. Melton's severe restrictions were inconsistent with the other evidence of record. (Tr. 22). First, Dr. Melton's physical RFC assessment was inconsistent with his own treatment notes. Throughout his course of

15

treatment, Dr. Melton never restricted any of Plaintiff's daily activities. The absence of physical restrictions from a treating physician constitutes substantial evidence that an impairment is not disabling. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). Indeed, Dr. Melton's records document very little other than a diagnosis and prescribed medication. Furthermore, Dr. Melton's physical RFC assessment fails to point to any particular records in Plaintiff's medical history to support his conclusions, besides relying on Plaintiff's past compression fractures and subjective complaints of pain. (Tr. 310-11). The regulations state that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Furthermore, the ALJ notes that Dr. Melton "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported." (Tr. 22). As stated above, substantial evidence exists for questioning the reliability of Plaintiff's subjective complaints.

Additionally, Dr. Melton's assessment contradicts the weight of the medical evidence of record. (Tr. 22). While the objective medical evidence clearly establishes that Plaintiff suffered multiple thoracic vertebral fractures post motor vehicle accident in 2003 and currently suffers from osteopenia of the hip and lumbar spine and mild degenerative disc disease of the cervical spine, it fails to support the extreme physical restrictions assessed by Dr. Melton. (Tr. 240, 254, 346). By February 2004, X-rays of Plaintiff's thoracic spine showed "good healing" of her compression fractures. (Tr. 330). In April 2004, Dr. Hoblitzell

again noted that the fractures were healing and there were no obvious surgical abnormalities. (Tr. 329). He also stated that Plaintiff could return to light duty work and recommended that Plaintiff undergo a functional capacity evaluation and short course of work conditioning; however, Plaintiff failed to submit to the evaluation and work conditioning. (Tr. 329). In June 2005, a bone scan only showed evidence of her prior fractures at T11-12 and was otherwise unremarkable concerning her neck and left shoulder. (Tr. 327). At this time, Dr. Hoblitzell opined that Plaintiff should be at maximum medical improvement. (Tr. 327). He again referred her for a functional capacity evaluation because she "may need to be recommended for permanent type restrictions," but he did not assess any restrictions at that time. (Tr. 327). Plaintiff again failed to submit to the functional capacity evaluation. After this, Plaintiff treated conservatively with pain medication prescribed by Dr. Melton. For all of these reasons, substantial evidence supports the ALJ's decision to reject Dr. Melton's RFC assessment.

### 4. The ALJ's RFC Was Supported By Substantial Evidence

Plaintiff next argues that the ALJ improperly assessed Plaintiff's RFC because he failed to incorporate limitations that would accommodate all of her impairments. The ALJ determines the RFC based on all relevant evidence in the case record, 20 C.F.R. §§ 404.1545(1), 416.945(1), and therefore is not bound by any specific medical opinion. In the present case, ALJ Paris found that Plaintiff is capable of performing light work with only occasional stooping, kneeling, crouching or crawling. (Tr. 20).

Plaintiff argues that the ALJ erred by failing to incorporate Dr. Hoblitzell's August 18, 2004 limitation against lifting overhead. (Tr. 329). The ALJ addressed this limitation in his decision stating that it is "consonant with the adjudicated [RFC] and with work requiring light

17

exertion." (Tr. 22, n.13). Moreover, Dr. Hoblitzell's restriction was based solely on Plaintiff's subjective complaints of pain in her back and left scapular region. (Tr. 329). The objective medical evidence showed healing of the compression fractures and no surgical abnormalities. (Tr. 329). Dr. Hoblitzell stated on multiple occasions that Plaintiff could return to light duty work and recommended her for a functional capacity evaluation and short course of work conditioning. (Tr. 327, 329). Furthermore, in June 2005, when he stated that Plaintiff had reached maximum medical improvement, he did not assess any restrictions. (Tr. 327). Accordingly, substantial evidence supports the ALJ's determination to exclude a specific limitation on overhead lifting.

Plaintiff also alleges that the ALJ improperly excluded any restrictions concerning her "left shoulder rotator cuff tear and presumed carpal tunnel syndrome, such as limiting reaching and feeling/fingering with the left upper extremity." (Doc. # 13, at 29). As stated above, Plaintiff never received an MRI to confirm a diagnosis of a rotator cuff tear, and the X-rays showed only mild acromioclavicular arthritis and no other significant abnormalities. (Tr. 328). Plaintiff was also never diagnosed with carpal tunnel syndrome, as Plaintiff's EMG studies were normal. (Tr. 329). Furthermore, the record is devoid of any limitations on Plaintiff's reaching and feeling/fingering abilities. Indeed, Dr. Melton opined that Plaintiff's reaching, handling, feeling, and pushing/pulling abilities were not affected by her impairments. (Tr. 311). Therefore, this argument is without merit.

Plaintiff also argues that the ALJ erred by failing to include limitations for her mental impairments, such as "limiting work with the public and coworkers; limiting her to unskilled, simple, repetitive tasks; or limiting her to no fast-paced or production rate work." (Doc. # 13, at 29). In support of this argument, Plaintiff cites the consultative report of Dr. Shurling

18

who opined that Plaintiff has a "fair" ability to interact with others and to meet the quality and productivity standards of a workplace. While Plaintiff assumes that a "fair" ability indicates that she has obvious limitations, Dr. Shurling's report fails to identify any limitation on Plaintiff's ability to perform basic work activities. (Tr. 215-20). In fact, Dr. Shurling indicated that Plaintiff "functions within normal limits in all spheres" and "did not appear to be in any distress and did not appear to have disturbed mood and affect." (Tr. 219). Dr. Shurling found that she followed instructions and was able to sustain attention. (Tr. 219). Based on Dr. Shurling's examination and the record as a whole, it was entirely reasonable for ALJ Paris to perceive that Plaintiff's "fair" ability to interact with others and to meet the quality and productivity standards of a workplace was not a limitation on her ability to perform work.

Finally, Plaintiff contends that the ALJ erred when he failed to incorporate restrictions that would address Plaintiff's cervical degenerative disc disease and chronic back pain, such as limiting repetitive turning of Plaintiff's head from side to side or looking up and down. Again, the record is silent as to any limitations due to Plaintiff's back pain, besides Dr. Melton's opinion which was previously addressed. Accordingly, the ALJ did not improperly assess Plaintiff's RFC by failing to incorporate these additional limitations.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Although the record contains differing opinions as to the extent of Plaintiff's limitations, the Court finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in evidence. *See Richardson v. Perales*, 402 U.S.

389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 14) is hereby **GRANTED**; and

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 20th day of January, 2012.



G:\DATA\SocialSecurity\MOOs\Lexington\5-11-119 Dove-Askin MOO.wpd